## Appeal of UNITED METAL SPINNING COMPANY, INC.

Docket No. 1138.   Submitted May 25, 1925.   Decided September 8, 1925.

> During the year 1919 the United Metal Spinning Co., Inc.,
> owned 66⅔ per cent of the stock of the B. & L. Auto Lamp Co.
> *Held*, that the United Metal Spinning Co., Inc., was not affiliated with the B. & L. Auto Lamp Co. during the year 1919.

*William Bernstein, Esq.*, for the taxpayer.
*Benjamin H. Saunders, Esq.*, for the Commissioner.

Before JAMES, SMITH, and TRUSSELL.

### FINDINGS OF FACT.

The stockholders of the United Metal Spinning Co., Inc., during the year 1919 were Ruben Kasher and one Langert, who each owned 50 per cent of its capital stock.   In 1917 one Leon Lapidus came to Kasher with a proposition that the two of them acquire a controlling interest in the capital stock of the B. & L. Auto Lamp Co., a New York corporation, with its place of business in the City of New York.   Lapidus had formerly been employed by this company which was then in financial difficulties.   After a careful inspection of the plant of the B. & L. Auto Lamp Co., Kasher acquired one-third of the stock of the company from its then president, one Brown, or from Beckett, the other stockholder.   Lapidus acquired another third of the capital stock of the company, the par value of the one-third interest being $5,000, from Brown, paying $1,800 cash therefor and giving his note to Brown for $2,000 additional and a further note for $1,200 payable from the profits of the business.   A little later Langert and Kasher acquired the remaining third of the capital stock of the B. & L. Auto Lamp Co. and also acquired Brown's interest in the notes which had been given by Lapidus to Brown for the third interest acquired by Lapidus.   All of the money paid by Kasher and Langert for the stock of the B. & L. Auto Lamp Co. was advanced to them by the taxpayer, United Metal Spinning Co., Inc.   The shares of stock acquired were turned over to the taxpayer's attorney, one Pompan.   The shares of stock acquired by Lapidus were also turned over to Pompan— whether for safe-keeping or as security for the payment of Lapidus' notes to Brown is not clear.   Lapidus was manager of the factory of

the B. & L. Auto Lamp Co. He voted his stock at all meetings of the stockholders.

At the time Lapidus acquired his shares of stock in the B. & L. Auto Lamp Co., Kasher made an oral agreement with Lapidus that he would take his shares off his hands at any time he wished to leave the company and pay him cash therfor. The B. & L. Auto Lamp Co. operated at a loss during the years 1917, 1918, and 1919. Money for pay rolls and for the operation of the Lamp Company was advanced by the taxpayer. At the close of 1919 Kasher and Langert decided that it would be to the best interests of the B. & L. Auto Lamp Co. to move the factory from the Borough of Manhattan to Brooklyn. Lapidus did not wish to move to Brooklyn and, after some negotiation, agreed to sell his shares of stock in the B. & L. Auto Lamp Co. to the taxpayer for $1,400 cash. The actual transfer of the shares was made in January, 1920, and shortly thereafter the B. & L. Auto Lamp Co., as a corporation, was dissolved.

For the year 1919 the taxpayer filed a consolidated return with the B. & L. Auto Lamp Co. The taxpayer made a large profit for the year while the Lamp Company sustained a large loss.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: The taxpayer claims that it was affiliated with the B. & L. Auto Lamp Co. for the year 1919. This is denied by the Commissioner upon the ground that it owned or controlled only two-thirds of the capital stock of the Lamp Company during the year and that the ownership or control of that amount of stock of its subsidiary is not sufficient to entitle the corporations to file a consolidated return for the year 1919 under section 240 (b) of the Revenue Act of 1918, which provides that two or more domestic corporations are affiliated "if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others."

The evidence adduced at the hearing of this appeal is not definite. The shares of stock of the B. & L. Auto Lamp Co. acquired by the taxpayer were apparently, in the first instance, acquired by two individuals, each of whom owned 50 per cent of the stock of taxpayer. These certificates were acquired with money advanced by the taxpayer and they were turned over to one Pompan, an attorney, apparently for safe-keeping. It is not at all clear whether the shares of stock were carried as an investment on the taxpayer's books of

account. The certificate for the shares of stock in the B. & L. Auto Lamp Co. acquired by Lapidus was also held by Pompan,—whether for safe-keeping or as security for the payment of a note originally given to Brown, but later acquired either by Kasher or the taxpayer, is not certain. Lapidus had an agreement with Kasher whereby he could sell his stock to Kasher at any time that he might desire to retire from the business. Apparently, however, Lapidus was not required to offer the stock to Kasher if he did not desire to do so. Lapidus voted the stock as he wished at all meetings of the stockholders and apparently the taxpayer had no control over the shares of stock. The only conclusion to be drawn from the evidence is that the taxpayer owned two-thirds of the shares of stock of the B. & L. Auto Lamp Co. and the remaining third was owned by Lapidus, who owned no stock whatever of the taxpayer. This ownership is not enough to entitle the corporation to file a consolidated return with the B. & L. Auto Lamp Co.

ARUNDELL not participating.